UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HENRY NELSON,

       Plaintiff,

v.

WAYNE STATE UNIVERSITY,

       Defendant.

Case No.  08-13633

Hon. Victoria A. Roberts

_____/

## ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

**I.      INTRODUCTION**

This matter is before the Court on Defendant's Motion for Summary Judgment.
Plaintiff filed Response.  For the reasons stated, the Court **GRANTS** the Motion.

**II.     BACKGROUND**

Plaintiff Henry Nelson brings this action alleging violations of the Family and
Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 *et seq.,* against his former
employer, Defendant Wayne State University ("WSU").   He asserts claims of FMLA
interference and retaliation as a result of his termination on July 23, 2007.

Plaintiff was hired by WSU on September 6, 1996 as a custodian in the Facilities
and Management Department.  He became a member of the American Federation of
State, County and Municipal Employees ("AFSCME") union.   During his employment,
Plaintiff received a copy of the WSU Custodial Services Department Manual ("CSDM"),

an employee handbook which contained this attendance policy:

> Call-in Procedure
>
> .     .     .
>
> #2)  Employees should call in personally.  The only acceptable exception to this rule is when employees cannot call-in personally because of health reasons or other emergency situations.
>
> .     .     .
>
> #5)  Employees must call-in each day of an absence unless they have already provided the Custodial Office with documentation of the duration of the absence or currently possess medical documentation from their physician.  Medical documentation can be also turned in to Employment Services.

> WSU also has an Administrative Policies and Procedures Manual ("APPM")

which contains this attendance policy:

> **3.0.11  Attendance Standards for Non-Academic Employees and Non-Represented Academic Employees**
>
> **<u>POLICY</u>**
>
> .     .     .
>
> NOTIFYING SUPERVISOR OF ABSENCE
>
> Employees are required to call into their supervisor or the supervisor's designee as soon as possible when the employee is going to be absent . . .
>
> **3.0.12  Absences**
>
> **<u>POLICY</u>**
>
> An employee is to notify the supervisor in advance when he/she expects to be absent.  When this is not possible, as in the case of sudden illness, an employee must notify the supervisor and explain why he/she is absent and when he/she expects to return.  It is expected that the employee will call in each and every day of absence unless specifically directed to do otherwise by the supervisor.
>
> Employees who are frequently absent may be subject to disciplinary action up to and including discharge.  An employee absent without previous permission or

2

without notifying his/her supervisor, for three (3) consecutive working days is
deemed to be an automatic resignation.

(It is unclear whether Plaintiff received a copy of the APPM.)  WSU says the daily call-in
policy allows the supervisor to plan for someone else to do the employee's work in his
absence and minimize disruption; the policy is applied equally to all employees
regardless of whether they are on FMLA leave.

On June 27, 2007, Plaintiff's supervisor, William Johnson, granted his request to
leave work early.  Later that day, Plaintiff admitted himself into Henry Ford Health
System's Maplegrove Center for in-patient treatment for drug and alcohol addiction; he
remained there until July 7, 2007.  According to Plaintiff, he told Johnson that he was
leaving work early to prepare paperwork for an FMLA leave.  Johnson denies this claim.

On June 29, 2007, Plaintiff's physician faxed a FMLA Request for Leave of
Absence and Certification Relating to Employee's Own Serious Health Condition
("Certification") to WSU's Employment Service Center ("ESC").  The Certification said
Plaintiff could not work from June 27, 2007 through July 9, 2007, and could return to
work without restriction on July 10, 2007.

Plaintiff called in "sick" on each of the first three days of his treatment.  He left
voicemail messages, but did not mention FMLA leave or say that he would be absent
any additional days.  Johnson says he was unaware of Plaintiff's FMLA leave and
considered Plaintiff a "no call, no show" for the week of July 2, 2007.  Plaintiff admits he
did not call his supervisor after the ESC received his FMLA certification paperwork.

Plaintiff returned to work on July 10, 2007.  On that same date, Plaintiff's
supervisor interviewed him with an AFSCME union representative present and

3

suspended him indefinitely pending further investigation.  On July 18, 2007, the ESC approved Plaintiff's FMLA leave.  On July 23, 2007, Plaintiff was terminated for failing to follow the call-in procedures and for a repeated history of failing to follow University policies and procedures.

As an AFSCME member, Plaintiff was subject to the progressive discipline policy in the Guidelines and Work Rules for AFSCME Represented Employees ("AFSCME Work Rules").  Under the AFSCME Work Rules, progressive discipline is taken with employees who violate work rules or otherwise behave unacceptably.  Those steps are:

- written reprimand;
- one-day disciplinary suspension - for first offense after written step;
- three-day suspension - for second offense after written step;
- five-day suspension - for third offense after written step;
- discharge - for fourth offense after written step

During Plaintiff's 10-year tenure, he was disciplined on numerous occasions for violating University policy.  For the last two years of his employment, Plaintiff received the following progressive discipline for rule violations:

- Nov. 17, 2005 - Written reprimand, Failure to Follow Instructions/Work Procedures and Failure to Follow Call-In Procedures

- Dec. 19, 2005 - 3-day suspension, Failure to Follow Instructions/Work Procedures, Failure to Follow Call-In Procedures and Absenteeism/Tardiness/Attendance Standings

- Mar. 6, 2006 - 5-day suspension, Failure to Follow Instructions/Work Procedures and Failure to Follow Call-In Procedures

- Aug. 25, 2006 - Unpaid Indefinite Suspension, Failure to Follow Instructions/Work Procedures and Failure to Follow Call-In Procedures

- Dec. 18, 2006 - 1-day suspension, Failure to Follow Instructions/Work Procedures and Lack of Work Effort

- Feb. 27, 2007 - 3-day suspension, Failure to Follow Instructions/Work

4

Procedures and Unauthorized Use of WSU Property

• Mar. 21, 2007 - 5-day suspension, Failure to Follow Instructions/Work Procedures, Lack of Work Effort, Overstaying, and Break/Lunch Solicitation

WSU says it terminated Plaintiff because he violated the attendance policy set forth in the APPM by failing to call his supervisor each day of his leave. Plaintiff asserts the CSDM contains an alternate policy, applicable to custodial employees, which allowed him to contact the ESC in lieu of calling his supervisor regarding absences. Plaintiff says he was excused from the daily call-in requirement after he turned in certification paperwork to the ESC.

Plaintiff administratively challenged his termination. He first filed a grievance, which was denied. Plaintiff next filed a Step 4 appeal, which was denied. Plaintiff then requested arbitration; the arbitrator upheld the termination. Thereafter, Plaintiff filed this action.

WSU moves the Court for summary judgment on the ground that there is no genuine issue of material fact. Plaintiff opposes the Motion. He asks the Court to enter an Order finding WSU liable for FMLA violations and to schedule a trial on the issue of damages only.

III.    STANDARD OF REVIEW

Under Fed. R. Civ. P 56(c), summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Copeland v. Machulis*, 57 F.3d 476, 478 (6th Cir. 1995). A fact is "material" and precludes a grant of summary judgment

if "proof of that fact would have [the] effect of establishing or refuting one of the essential elements of the cause of action or defense asserted by the parties, and would necessarily affect application of appropriate principle[s] of law to the rights and obligations of the parties."  *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984).

The court must view the evidence in the light most favorable to the nonmoving party and it must also draw all reasonable inferences in the nonmoving party's favor. *Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995).  The existence of a mere scintilla of evidence in support of the non-moving party's position will be insufficient to survive summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  Rather, there must be evidence on which the jury could reasonably find for the non-moving party. *Id.* at 250-51.

## IV.   ANALYSIS

The Sixth Circuit recognizes two distinct theories of wrongdoing under the FMLA. *Killian v. Yorozu Auto. Tenn., Inc.*, 454 F.3d 549, 555-56 (6th Cir. 2006).  The "entitlement" or "interference" theory arises from 29 U.S.C. § 2615(a)(1) and 29 U.S.C. § 2614(a)(1), which make it unlawful for employers to interfere with or deny an employee's exercise of his FMLA rights (§ 2615(a)(1)), and which require the employer to restore the employee to the same or an equivalent position upon the employee's return (§ 2614(a)(1)). *Arban v. West Publ'g Corp.*, 345 F.3d 390, 400-01 (6th Cir. 2003). The "retaliation" or "discrimination" theory, on the other hand, arises from 29 U.S.C. § 2615(a)(2), which prohibits an employer from discharging or discriminating against an employee for "opposing any practice made unlawful by" the Act. *Id.*

Plaintiff asserts claims under both the interference and retaliation theories.  In

6

seeking summary judgment in its favor on both claims, WSU says it granted Plaintiff leave to which he was entitled under the FMLA, and that he was terminated for violating a distinct attendance policy. The Court addresses each argument in turn.

## A.    INTERFERENCE CLAIM

The FMLA entitles an eligible employee to take 12 weeks of leave per 12 month period "[b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2615(a)(1)(D). The FMLA also entitles an employee on leave to the right to return to the same position and benefits he had just before he took leave. 29 U.S.C. § 2614(a)(1)-(2).

Under 29 C.F.R. §825.220(c), employers cannot use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions. This negative-factor analysis is applicable in analyzing an interference claim. *Brenneman v. Medcentral Health Sys.*, 366 F.3d 412, 422 (6th Cir 2003). If an employer takes an employment action based, in whole or in part, on the fact that the employee took FMLA-protected leave, the employer has denied the employee a benefit to which he is entitled. *Id.*

An employer's intent is not directly relevant to the entitlement inquiry. *Edgar v JAC Prods.*, 443 F.3d 501, 507 (6th Cir. 2006). However, "interference with an employee's FMLA rights does not constitute a violation if the employer has a legitimate reason unrelated to the exercise of FMLA rights for engaging in the challenged conduct." *Id.* at 508 (citing *Arban v. West Publ'g Corp.*, 345 F.3d 390, 401 (6th Cir. 2003).

An employee can establish a FMLA discrimination claim through direct or indirect

7

evidence.  "Direct" evidence "prove[s] the fact in question without reliance upon inference." *Caskey v. Colgate-Palmolive Co.*, 535 F.3d 585, 593 (7th Cir. 2008).  Direct evidence usually involves some form of admission by the decisionmaker. *Id.*

Plaintiff says WSU's failure to follow its own internal policy in the CSDM is direct evidence of discrimination.  Plaintiff relies *McLemore v. Detroit Receiving Hospital*, 196 Mich App 398, 399 (1992), *Aka v. Washington Hosp. Ctr.*, 156 F.3d 1284, 1298 (D.C. Cir. 1998), *Pennington v. Western Atlas, Inc.*, 202 F.3d 902 (6th Cir. 2000) and *Ross v. Campbell Soup Co.*, 237 F.3d 701 (6th Cir. 2001) in support of this proposition.

In *McLemore*, the plaintiff claimed sex discrimination and retaliatory discharge under the Michigan Civil Rights Act,  Mich. Comp. Laws § 37.2101 *et seq.*, with regards to her layoff in a reduction in force.  In *Aka*, the plaintiff alleged his employer violated the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.*, by failing to reasonably accommodate his disability by reassigning him to a vacant position.  Both *Pennington* and *Ross* involved discrimination claims based on negative performance evaluations.  Here, Plaintiff alleges he was terminated for taking FMLA leave and there is no claim related to Plaintiff's performance.  None of these cases is on point.

Plaintiff asserts that he followed WSU's usual and customary practices by submitting FMLA forms from his physician.  He says WSU approved his FMLA leave, then shortly thereafter terminated him.  WSU argues that Plaintiff was terminated for failing to comply with WSU's usual and customary procedure of notifying his supervisor when absent from work and because of his repeated history of failing to follow University policies and procedures.  Unable to refute WSU's reliance on these allegations, and without some evidence linking his leave to his termination, Plaintiff

8

cannot sustain his FMLA discrimination claim under the direct method.

Where there is no direct evidence of discrimination, the *McDonnell Douglas*

burden shifting approach applies. *Skrjanc v. Great Lakes Power Serv. Co.,* 272 F.3d

309, 315 (6th Cir. 2001). The employee must establish a *prima facie* case by showing:

> 1) he is an eligible employee; 2) defendant is a covered employer; 3) he was
> entitled to leave under the FMLA; 4) he gave defendant notice of his intent to
> take leave; and 5) defendant denied him FMLA benefits to which he was
> entitled.

*Hoge,* 384 F.3d at 244; *Cavin v Honda of America Mfg., Inc.*, 346 F.3d 713, 719 (6th Cir.

2003). The fifth element of an interference claim can also be that the employer has

"somehow used the leave against him and in an unlawful manner, as provided in either

the statute or regulations." *Bradley v Mary Rutan Hosp.*, 322 F. Supp. 2d 926, 940 (S.D.

Ohio 2004). If he satisfies the *prima facie* elements, the burden shifts to the employer

to show a non-discriminatory reason for firing the employee. *Caskey*, 535 F.3d at 593.

If the employer makes such a showing, the burden then shifts back to the employee to

establish that the purported reason is pretextual. *Id.*

WSU concedes, for purposes of this Motion, that Plaintiff meets the first four

elements of his *prima facie* case. WSU says Plaintiff cannot establish the fifth element

– that he was denied benefits under FMLA or that he was terminated because he

exercised his rights under FMLA. The Court agrees.

First, Plaintiff says that WSU's call-in policy violates the FMLA by imposing

stricter requirements than contemplated by the FMLA. He contends he "presented a

legitimate explanation for his absences and the reasons he stopped calling in." Plaintiff

says that under *McClain v. Detroit Entertainment, LLC*, 458 F.Supp. 2d 427 (E.D. Mich.

9

2006) and *Marrero v. Camden County Board of Social Services*, 164 F. Supp. 2d 455, 463 (D. N.J. 2001), where an employer's internal policy conflicts with the provisions of the FMLA, the FMLA controls and the employee need only comply with the requirements of the Act to invoke its protections. Plaintiff's reliance on both cases is misplaced.

In *McClain*, the plaintiff challenged her discharge for violating her employer's internal attendance and medical documentation policies, where she already had been approved for intermittent FMLA leave supported by her physician's certification. The employer requested additional certification but fired her less than a week later, seemingly afoul of the FMLA regulation that grants employees at least 15 days to obtain a requested medical recertification. The court denied summary judgment because there were issues of fact whether the employer imposed requirements in excess of those set forth in the FMLA. *McClain*, 458 F.Supp. 2d at 437.

Similarly, in *Marrero*, the court denied summary judgment where an employer's internal policy required a doctor's certification within five days rather than the 15 days provided under the FMLA, because the policy diminished the employee's rights under the FMLA. *Marrero*, 164 F. Supp. 2d at 464.

That is not the situation here. At the time of Plaintiff's absences, he had not yet been approved for FMLA leave and he presents no credible evidence otherwise. And, WSU's call-in procedure is not a pre-requisite to entitlement of FMLA leave, but rather it sets forth obligations of employees who are on leave, regardless of whether the leave is pursuant to the FMLA. *Callison v. City of Philadelphia*, 430 F.3d 117, 121 (3d Cir. 2005).

Moreover, FMLA regulations specifically provide that an employer may require an

employee on FMLA leave to report periodically on the employee's status and intent to return to work. See 29 C.F.R. § 825.309(a).  Employers who enforce such policies by firing employees on FMLA leave for noncompliance do not violate the FMLA. See *Bacon v. Hennepin County Medical Cntr*, 550 F.3d 711 (8th Cir. 2008) (employee's failure to adhere to employer's call-in policy defeated her FMLA interference claim); *Bones v. Honeywell Int'l Inc.*, 366 F.3d 869, 878 (10th Cir. 2004) (same); *Lewis v. Holsum of Fort Wayne, Inc.*, 278 F.3d 706, 710 (7th Cir. 2002) (same).  WSU's call-in procedure, therefore, does not violate the FMLA. See *Allen v. Butler County Commissioners*, 2009 U.S. App. LEXIS 18773 (6th Cir. Aug. 18, 2009).

Next, Plaintiff says the CSDM allowed him to contact the ESC in lieu of his supervisor regarding absences.  Plaintiff argues that on his 13 prior FMLA leaves, WSU (1) allowed him to communicate his medical requests to ESC, (2) communicated their acknowledgment and approval of his medical requests through ESC, and (3) informed him that he could have medical request processed through ESC.

Plaintiff fails to mention that he was previously disciplined for failing to call-in regarding absences and specifically counseled regarding the call-in policy.  In August 2006, Plaintiff took an FMLA leave, without telling his supervisor that he would be gone. Plaintiff was disciplined for failing to follow call-in procedures and being a no-call, no show from August 15 through August 25, 2006. *See* Garcia Affidavit, Exh. D-4.  At an August 29, 2006 disciplinary hearing, Lloyd Garcia, Manager of the Custodial Department, granted Plaintiff leniency due to his personal problems, but informed Plaintiff that he had to call his supervisor each day of an absence, even if he was on FMLA leave. *Id.*  Garcia further instructed Plaintiff that if he did not follow this procedure

11

in the future, he would face severe disciplinary action. *Id.*

Plaintiff's direct supervisor, William Johnson, also notified Plaintiff during the 2006 no-call, no-show incident that he had to call in every day of an absence, even if he was off on FMLA leave. *See* Johnson Affidavit., Exh. D-9.  Johnson says Plaintiff told him he understood the daily call-in requirement. *Id.*  Eugene Carter, Director of Custodial Services, says that Plaintiff was told on numerous occasions about the policy in the APPM and that he had used it in the past, even when on FMLA leave. *See* Carter Affidavit, Exh. D-8.

Had Plaintiff not been previously disciplined and counseled about violations of the attendance policy, a jury might reasonably find that the CSDM allowed him to contact the ESC in lieu of his supervisor.  However, Plaintiff himself admitted that he worked at WSU for more than 10 years and knew he had to call in each day if he would be absent, even on FMLA leave. *See* Nelson Dep., Exh. D-5, p. 39-40, 47.   Moreover, Plaintiff said he told Johnson on June 26, 2007 that, "I might not be coming back in if I'm approved for FMLA." *See* Nelson Dep., Exh. D-5, p. 53.  He presents no evidence that he provided the Custodial Office with documentation of the duration of the absence, as required by the CSDM.   Thus, he cannot establish that he complied with an alternate policy.

The evidence does establish that Plaintiff had actual knowledge of the call-in policy and failed to comply.  Based on his extensive discipline record, WSU could have terminated Plaintiff under the progressive discipline policy after the August 2006 incident.  Instead, he was granted leniency.  However, since Plaintiff received a 5-day suspension in March 2007, with this incident the next step was termination.

An employer who interferes with an employee's FMLA rights will not be liable if the employer can prove it would have made the same decision had the employee not exercised the employee's FMLA rights. *Throneberry v. McGehee Desha County Hosp.*, 403 F.3d 972, 980 (8th Cir. 2005). Because Plaintiff was terminated for failing to comply with WSU's call-in policy, and he would have been terminated irrespective of whether the absences were related to FMLA leave, he does not state an interference claim under the FMLA.

## B.  RETALIATION CLAIM

Under the retaliation theory (also known as the discrimination theory), the employer's motive is an integral part of the analysis. *Edgar v. JAC Prods.*, 443 F.3d 501, 507 (2006). To state a retaliation claim, Plaintiff must show that: 1) he availed himself of a protected right under the FMLA; 2) he was adversely affected by an employment decision; and 3) there was a causal connection between his protected activity and defendant's adverse employment actions. *Skrjanc*, 272 F.3d at 314. If the employee satisfies these three requirements, the burden shifts to the employer to proffer a legitimate, nondiscriminatory rationale for discharging the employee. *Id.* at 314.

The Sixth Circuit held that the FMLA prohibits employers from taking adverse employment actions against employees based upon the employee's exercise of FMLA leave. *Bryant v Dollar General Corp.*, No. 07-5006 (6th Cir. Aug. 15, 2008). Hence, a plaintiff may recover under a retaliation theory only by showing that the action was taken because the employee exercised, or complained about the denial of, FMLA-protected rights. *Edgar*, 443 F.3d at 512.

Plaintiff contends he provided the ESC with FMLA-compliant medical

13

documentation, which outlined that he was undergoing 10 days of inpatient treatment. He says WSU approved his FMLA leave, then terminated him in retaliation for taking the FMLA leave.   Thus, his evidence regarding causation appears to be based on temporal proximity alone.  While temporal proximity is sufficient to meet the low burden required to establish a *prima facie* case of retaliation in violation of the FMLA, it alone is not sufficient to establish that an employer's legitimate, non-discriminatory reason for discharge was a pretext. *Skrjanc*, 272 F.3d at 317.  Therefore, Plaintiff must provide further evidence that creates a genuine issue of material fact regarding the truth of WSU's proffered reasons for his termination.

Plaintiff fails to make this showing.  Plaintiff presents no evidence that WSU was motivated by an impermissible retaliatory purpose.  Plaintiff admitted that he was not denied FMLA leave in the past if he qualified and some years he took two or three FMLA leaves.  He presents evidence showing that WSU approved nine prior FMLA leaves between 1999 to 2006. *See* Plaintiff's Motion, Exh. 1 - 7, 12, 14, 17-18.  When asked if he was ever fired because he took FMLA leave, Plaintiff said "[s]eemed like they did this time." *See* Nelson Dep., Exh. D-5, p. 52.  This does not show that WSU's reasons for his discharge – his violation of the call-in policy and repeated violations of University policies – were pretextual.  Plaintiff cannot rely upon bare assertions, conclusory allegations, or suspicions. *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995).  Plaintiff fails to raise a genuine issue of material fact on his FMLA retaliation claim.

## V.    CONCLUSION

Defendant's Motion for Summary Judgment is **GRANTED**.

14

**IT IS ORDERED.**

s/Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated:  November 13, 2009

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on November 13, 2009.

s/Linda Vertriest
Deputy Clerk